UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MUNTHER YALDU,

                Plaintiff,

                                      Case Number 09-12472

v.                                       Honorable David M. Lawson

BANK OF AMERICA CORPORATION,
doing business as BANK OF AMERICA, and
BAC HOME LOAN SERVICING, limited
partnership,

                Defendants.

_____/

**OPINION AND ORDER GRANTING IN PART AND DENYING IN PART
DEFENDANTS' MOTION TO DISMISS AND GRANTING IN PART AND
DENYING IN PART PLAINTIFF'S MOTION TO DISMISS WITHOUT PREJUDICE**

       Plaintiff Munther Yaldu filed this action against defendant Bank of America Corporation,

the successor to Countrywide Financial Corporation which refinanced Yaldu's residential home

mortgage, and defendant BAC Home Loans, the servicing agent for the loans. Yaldu alleges several

claims based on irregularities in the refinancing process and contends that Countrywide engaged in

predatory lending because it extended credit to Yaldu without any evidence that the loan could be

repaid. The defendants filed a motion to dismiss for failure to state a claim. The plaintiff then filed

his own motion to dismiss without prejudice, apparently because he cannot afford the legal fees

necessary to prosecute his claim at the present time. The Court heard the parties' arguments in open

court on November 10, 2009. The Court now concludes that several of the plaintiff's twelve counts

must be dismissed under Federal Rule of Civil Procedure 12(b)(6). However, a few of those counts

might survive the motion if the plaintiff is allowed an opportunity to amend his complaint to state

claims with specificity. But because the plaintiff apparently chooses not to proceed with his case, the Court will dismiss those counts without prejudice.

I.

According to the complaint, in April 2007, the plaintiff, a manager at the McDougall Market in Detroit, purchased a house in Sterling Heights, Michigan for $307,500. He put down $80,000 and financed the balance with a new mortgage from Countrywide Financial. In February 2008, the plaintiff decided to refinance his $231,000 loan balance through Countrywide in order to obtain a more favorable interest rate. Although the plaintiff's reported income for the years 2006 through 2008 was $21,901, $16,380, and $21,350, respectively, he claims that the lender intentionally misrepresented on the Uniform Residential Loan Application that the plaintiff's monthly income was $4,850, which translated to an annual income of $58,200. According to the plaintiff, the bank intentionally misstated his salary so that the plaintiff could qualify for a loan he could not afford. The plaintiff adds that he was promised that "the financing scheme utilized was meant to be temporary and that [he] would be able to sell [his] property or refinance the loans if paying the monthly loan payments became problematic." Compl. ¶ 21. The plaintiff alleges that this practice fit within the broader plan by the bank to "inflate[] the supposed market values of properties throughout the mortgage market in order to lend more money and sell the ill[-]begotten mortgage loans on the mortgage-backed securities . . . market." *Id*. ¶ 23.

The plaintiff defaulted on his payments and the defendants purportedly refused to make any accommodations. Countrywide was acquired by Bank of America, who currently owns the plaintiff's mortgage. Defendant BAC Home Loan Servicing, LP is the current servicer of the loan.

The plaintiff preempted the defendants' foreclosure action and a potential eviction by filing the present case, initially brought in the Macomb County Circuit Court but timely removed to this Court.

The plaintiff's complaint states twelve counts: (1) accounting to confirm the plaintiff's belief that he does not owe any money to the defendants; (2) violation of the Home Ownership and Equity Protection Act (HOEPA),15 U.S.C. § 1639, which prohibits extending credit without regard to payment ability of a consumer; (3) "predatory lending" based on the plaintiff's belief that the defendants extended credit to the plaintiff despite their knowledge that the plaintiff could not afford to repay; (4) violation of the Truth in Lending Act (TILA), 15 U.S.C. § 1601 *et seq.* based on false interest rate, fee, and monthly payment disclosures in connection with the closing; (5) fraudulent misrepresentation based on the defendants' exaggerated value of the plaintiff's property on the mortgage market; (6) negligent misrepresentation based on the same conduct; (7) defamation of credit and violation of the Fair Credit Reporting Act (FCRA), 15 U.S.C. § 1681 *et seq.*; (8) rescission of notes and mortgages; (9) reformation of notes and mortgages; (10) violation of the Mortgage Brokers, Lenders, and Servicers Licensing Act, Mich. Comp. Laws § 445.1651 *et seq.*, based on the defendants' alleged deceit; (11) violation of the usury law, Mich. Comp. Laws § 438.31 *et seq.*; and (12) temporary restraining order/preliminary injunction count. The plaintiff seeks an injunction preventing the defendants from evicting him and reporting negative credit information; rescission of the notes and mortgages; disgorgement of all interest paid to the defendants; reformation of the notes and mortgages to reflect a fair and equitable bargain; and costs and attorney's fees. In his response to the defendants' motion to dismiss, the plaintiff asserts his desire to "work" with the bank to adjust the value of his loan.

The defendants move to dismiss count 1 because there is no allegation that the parties engaged in a series of transactions necessitating an accounting and the plaintiff has an adequate remedy at law. They argue that counts 2 under HOEPA and 4 under TILA are time-barred, and the TILA count does not plead fraud with the requisite specificity, a defect shared by the fraud and negligent misrepresentation counts and the Mortgage Brokers, Lenders, and Servicers Licensing Act count, counts 5, 6 and 10. The defendants contend that count 3 – predatory lending – is not a recognized cause of action. The FCRA count (count 7) suffers from a variety of defects, including the failure to plead that reported information was false, and the failure of the plaintiff to notify a credit reporting agency of a dispute. Counts 8, 9, and 12 seeking rescission, reformation, and a preliminary injunction present no independent causes of action, but rather they are remedies. And count 11 under the Michigan usury statute must be dismissed because the loan at issue is exempted from the Michigan usury statute.

II.

Motions to dismiss are governed by Rule 12(b) of the Federal Rules of Civil Procedure and allow for dismissal for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "The purpose of Rule 12(b)(6) is to allow a defendant to test whether, as a matter of law, the plaintiff is entitled to legal relief even if everything alleged in the complaint is true." *Mayer v. Mylod*, 988 F.2d 635, 638 (6th Cir. 1993). When deciding a motion under that rule, the court must construe the complaint in the light most favorable to the plaintiff, accept all factual allegations as true, and determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "[A] judge may not grant a Rule 12(b)(6) motion based on a disbelief of a complaint's factual allegations."

*Columbia Natural Res., Inc. v. Tatum*, 58 F.3d 1101, 1109 (6th Cir. 1995). "However, while liberal, this standard of review does require more than the bare assertion of legal conclusions." *Ibid.* Federal Rule of Civil Procedure 8(a) requires that the complaint give the defendant fair notice of the nature of the claim and the factual grounds upon which it rests. *Twombly*, 550 U.S. at 555. Therefore, "[w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Ibid.* (citation omitted). "In practice, 'a . . . complaint must contain either direct or inferential allegations respecting all the material elements to sustain a recovery under some viable legal theory.'" *Allard v. Weitzman (In re DeLorean Motor Co.)*, 991 F.2d 1236, 1240 (6th Cir. 1993) (quoting *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1106 (1984)); *see also Ana Leon T. v. Fed. Reserve Bank*, 823 F.2d 928, 930 (6th Cir. 1987) (per curiam) (mere conclusions are not afforded liberal Rule 12(b)(6) review).

In assessing the viability of a complaint the pleads both factual allegations and conclusions, courts must undertake a "two-pronged approach." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1950 (2009). First, because conclusory allegations are not entitled to a presumption of correctness, the court must "identify[] the allegations in the complaint that are not entitled to the assumption of truth." *Id.* at 1951. "[B]are assertions," such as those that "amount to nothing more than a 'formulaic recitation of the elements'" of a claim, can provide context to the factual allegations, but are insufficient to state a claim for relief, and must be disregarded. *Ibid.* (quoting *Twombly*, 550 U.S. at 555). "It is the conclusory nature of [these] allegations, rather than their extravagantly fanciful nature, that disentitles them to the presumption of truth." *Ibid.*

After identifying the well-pleaded factual allegations, the Court must scrutinize these facts to see if they "plausibly suggest an entitlement to relief." *Ibid*. Although even "unrealistic or nonsensical" *factual allegations* must be credited, the Court now must determine whether there are "more likely explanations" for these facts than the inference required to support the plaintiff's legal theory. *Id.* at 1950-51 (stating that "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief'" (quoting Fed. R. Civ. P. 8(a)(2))). This does not require a "probability," but "asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 1949. The question is whether the complaint has "'nudged'" the claim of wrongdoing "'across the line from conceivable to plausible.'" *Id.* at 1951 (quoting *Twombly*, 550 U.S. at 570). Applying this test is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 1950.

"In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b); *see also United States ex rel. Bledsoe v. Cmty. Health Sys., Inc.*, 342 F.3d 634, 643 (6th Cir. 2003); *Frank v. Dana Corp.*, 547 F.3d 564, 570 (6th Cir. 2008) (holding that the complaint must "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent" (internal quotation marks and citation omitted)). Where there are multiple defendants, a claim must identify which of the defendants made the alleged misrepresentations. *Hoover v. Langston Equip. Assocs., Inc.*, 958 F.2d 742, 745 (6th Cir. 1992).

## A. HOEPA (Count 2)

The Home Ownership and Equity Protection Act of 1994, 15 U.S.C. §§ 1602(aa), 1610, 1639, and 1640, was enacted to amend the TILA to afford greater protections and impose additional disclosure requirements for "high-cost" or "high-rate" loans. High-risk HOEPA loans are defined in 15 U.S.C. § 1602(aa)(1), and encompass "consumer credit transaction[s] that [are] secured by the consumer's principal dwelling, other than a residential mortgage transaction, a reverse mortgage transaction, or a transaction under an open end credit plan" in which a loan's annual percentage rate at consummation exceeds by more than 10 percent the applicable yield on Treasury securities, or when the total points and fees payable by the consumer exceed eight percent of the "total loan amount," or $400, whichever is greater. 15 U.S.C. § 1602(aa)(i)(A)-(B).

One of the two sections of HOEPA upon which the plaintiff relies, 15 U.S.C. § 1639(b)(3), is entitled "Modifications," and provides in its entirety:

> The [Federal Reserve] Board may, if it finds that such action is necessary to permit homeowners to meet bona fide personal financial emergencies, prescribe regulations authorizing the modification or waiver of rights created under this subsection, to the extent and under the circumstances set forth in those regulations.

15 U.S.C. § 1639(b)(3).

The plain language of this subsection makes it clear that it does not impose a duty on lenders, but rather provides a congressional authorization of regulatory action in the lending industry. Without much explanation, it is quite clear that this subsection does not create an individual cause of action. *See Breitmeyer v. CitiMortgage, Inc.*, 09-11560, 2009 WL 3628005, at *5 (E.D. Mich. Oct. 30, 2009) (Murphy, J.); *King v. Bank of Am. Corp.*, 09-12481, 2009 WL 2960425, at *2 (E.D. Mich. Sept. 11, 2009) (Roberts, J.); *McLean v. Countrywide Home Loans, Inc.*, No. 09-11239, 2009 WL 2777017, at *3 (E.D. Mich. Aug. 27, 2009) (Steeh, J.).

The second subsection of HOEPA the plaintiff invokes is 15 U.S.C. § 1639(h), which prohibits creditors from "engag[ing] in a pattern or practice of extending credit to consumers under mortgages referred to in section 1602(aa) of this title based on the consumers' collateral without regard to the consumers' repayment ability, including the consumers' current and expected income, current obligations, and employment." Claims under section 1602(aa) of HOEPA are subject to the same statutes of limitation that are applicable to TILA, which is one year from the date of the transaction. *See* 15 U.S.C. §§ 1635(f), 1640(e). In this case, the refinancing loan closed in February 2008 but the plaintiff did not file his complaint until May 18, 2009. The statute of limitations, therefore, bars this claim.

### B. TILA (Count 4)

The Truth in Lending Act, Pub. L. No. 90-321, 82 Stat. 146 (codified as amended at 15 U.S.C. § 1601 *et seq.*), "'was enacted to promote the informed use of credit by consumers by requiring meaningful disclosure of credit terms.'" *Barrett v. JP Morgan Chase Bank, N.A.*, 445 F.3d 874, 875 (6th Cir. 2006) (quoting *Begala v. PNC Bank, Ohio, N.A.*, 163 F.3d 948, 950 (6th Cir. 1998)). The Act has a dual purpose: "to facilitate the consumer's acquisition of the best credit terms available; and to protect the consumer from divergent and at times fraudulent practices stemming from the uniformed use of credit." *Jones v. TransOhio Sav. Ass'n*, 747 F.2d 1037, 1040 (6th Cir. 1984) (citing *Mourning v. Family Publ'ns Serv., Inc.*, 411 U.S. 356, 363 (1973)). Consistent with this purpose, the Act gives a consumer-borrower the right to rescind a loan secured by the borrower's principal dwelling within three business days of the transaction. 15 U.S.C. § 1635(a). Beyond that, the Act allows for rescission of the loan secured by the borrower's principal dwelling even after the three days following the transaction where "the lender fails to deliver certain forms

or to disclose important terms accurately." *Beach v. Ocwen Fed. Bank*, 523 U.S. 410, 411 (1998) (citing 15 U.S.C. § 1635(f)). Alternatively, the Act allows an action for damages, including "actual damages," statutory damages in the amount of "not less than $400 or greater than $4,000," and the costs and attorney's fees. *See* 15 U.S.C. § 1640(a)(1)-(3).

To establish a claim, the borrower must prove that the lender failed to disclose one of the enumerated items of information relating to the terms and conditions of the loan. *See* 15 U.S.C. § 1638(b)(1). An assignee of a creditor may be liable under the Act as well, 15 U.S.C. § 1641(a), but only where "(A) the violation for which such action or proceeding is brought is apparent on the face of the disclosure statement provided in connection with such transaction pursuant to this subchapter; and (B) the assignment to the assignee was voluntary." 15 U.S.C. § 1641(e)(1). "[A] violation is apparent on the face of the disclosure statement if (A) the disclosure can be determined to be incomplete or inaccurate by a comparison among the disclosure statement, any itemization of the amount financed, the note, or any other disclosure of disbursement; or (B) the disclosure statement does not use the terms or format required to be used by this subchapter." 15 U.S.C. § 1641(e)(2). The statute further provides that "[a] servicer of a consumer obligation arising from a consumer credit transaction shall not be treated as an assignee of such obligation for purposes of this section unless the servicer is or was the owner of the obligation." 15 U.S.C. § 1641(f)(1).

A plaintiff must bring her action for damages under section 1640 of the Act "within one year from the date of the occurrence of the violation." 15 U.S.C. § 1640(e). The statute of limitations for damages actions is subject to equitable tolling in the case of fraudulent concealment. *Jones*, 747 F.2d at 1041-43 (holding that equitable tolling was available in a TILA case when the complaint alleged "knowing and fraudulent concealment of the variable interest rate provision and of the

mortgage note itself"). In such a case, "the one year period will begin to run when the borrower discovers or had reasonable opportunity to discover the fraud involving the complained of TILA violation." *Id.* at 1041. "In order to establish equitable tolling by the doctrine of fraudulent concealment, the plaintiffs must allege and establish that: 1) defendants concealed the conduct that constitutes the cause of action; 2) defendants' concealment prevented plaintiffs from discovering the cause of action within the limitations period; and 3) until discovery, plaintiffs exercised due diligence in trying to find out about the cause of action." *Egerer v. Woodland Realty, Inc.*, 556 F.3d 415, 422 (6th Cir. 2009). "The Federal Rules of Civil Procedure . . . require that the acts constituting fraudulent concealment of a claim be pled in the complaint." *Evans v. Pearson Enters., Inc.*, 434 F.3d 839, 851 (6th Cir. 2006). Such facts must be pleaded with particularity under Fed. R. Civ. P. 9(b). *Id.* at 850-51.

However, if the TILA disclosures were never made to the debtor, the debtor "has a continuing right to rescind," which right is "not dependent upon the one year statute of limitations period for a claim for damages." *Rudisell v. Fifth Third Bank*, 622 F.2d 243, 247-48 (6th Cir. 1980) (citations omitted); *see also* 12 C.F.R. § 226.23(a)(3) ("If the required notice or material disclosures are not delivered, the right to rescind shall expire 3 years after consummation."). The reverse is also true: "if the defined disclosures are made, the obligor has [only] three days to rescind a credit transaction." *McCoy v. Harriman Utility Bd.*, 790 F.2d 493, 496 (6th Cir. 1986). Nevertheless, the debtor's continuing right to rescind "'shall expire three years after the date of consummation of the transaction or upon sale of the property, whichever occurs first, notwithstanding the fact that' the required disclosures have not been made." *Mills v. EquiCredit Corp.*, 172 F. App'x 652, 656 (6th Cir. Feb. 24, 2006) (quoting 15 U.S.C. § 1635(f)).

The right of rescission under section 1635 does not apply to a "residential mortgage transaction," which is defined as a "transaction in which a mortgage, deed of trust, purchase money security interest arising under an installment sales contract, or equivalent consensual security interest is created or retained against the consumer's dwelling to finance the acquisition or initial construction of such dwelling." 15 U.S.C. §§ 1635(e)(1), 1602(w). Nor does it apply to "'refinancing' or loan 'consolidation' transaction of the principal balance with no new advances 'by the same creditor secured by an interest in the same property.'" *Barrett*, 445 F.3d at 878 (quoting 15 U.S.C. § 1635(e)(2)).

According to this authority, the statute of limitations for the plaintiff's action for damages under section 1640 has elapsed. The plaintiff refinanced his loan with Countrywide in February 2008 but did not file his action until May 18, 2009, over a year later. The plaintiff raises the issue of fraudulent concealment and requests equitable tolling. However, the plaintiff's allegations of fraud fail to comply with Rule 9(b)'s specificity requirement. The plaintiff has failed to plead with particularity any facts showing an affirmative act of fraud by the defendant. *See Egerer*, 556 F.3d at 425 (observing that to obtain tolling based on fraudulent concealment, there must be a showing that the defendant "affirmatively conceal[ed]" the facts giving rise to the claim). The plaintiff has also failed to allege facts showing that he acted with due diligence. Further, the plaintiff failed to allege the requirements for assignee liability (since the plaintiff is trying to impute liability of Countrywide to the Bank of America) – that "(A) the violation for which such action or proceeding is brought is apparent on the face of the disclosure statement provided in connection with such transaction pursuant to this subchapter; and (B) the assignment to the assignee was voluntary." 15 U.S.C. § 1641(e)(1).

With respect to BAC Home Loans Servicing, an entity that currently services the plaintiff's loan with the Bank of America, the plaintiff's TILA claims must be dismissed. The statute does not impose liability on "[a] servicer of a consumer obligation . . . unless the servicer is or was the owner of the obligation." 15 U.S.C. § 1641(f)(1). There are no allegations that BAC Home Loans Servicing owns the obligation. Therefore, BAC Home Loans Servicing cannot be held liable under TILA.

Nor may the plaintiff be allowed to restate his TILA claim with respect to rescission action under section 1635 because the right of rescission does not apply to a "residential mortgage transaction," 15 U.S.C. §§ 1635(e)(1), or to "refinancing or loan consolidation . . . of the principal balance by the same creditor secured by an interest in the same property." 15 U.S.C. § 1635(e)(2). The plaintiff's February 2008 transaction with Countrywide qualifies as refinancing; the plaintiff does not allege that he borrowed more money than necessary to satisfy the prior loan.

### C. Federal Credit Reporting Act and Defamation of Credit (Count 7)

The FCRA was enacted to "require that consumer reporting agencies adopt reasonable procedures for meeting the needs of commerce for consumer credit . . . in a manner which is fair and equitable to the consumer, with regard to the confidentiality, accuracy, relevancy, and proper utilization of such information in accordance with the requirements of this subchapter." 15 U.S.C. § 1681(b). The duties imposed by section 623 of the Act are twofold. Subsection (a) imposes responsibility upon furnishers of credit information to provide agencies with accurate credit information. 15 U.S.C. § 1681s-2(a). Subsection (b) of section 623 imposes upon data furnishers the duty to conduct investigations and promptly report and correct inaccurate information upon the notice of dispute. 15 U.S.C. § 1681s-2(b)

There can be no doubt that the duties imposed by 15 U.S.C. § 1681s-2(a) can only be enforced by government agencies and officials. *See* 15 U.S.C. § 1681s-2(c)(1)-(d) (such violations "shall be enforced exclusively as provided under section 1681s of this title by the Federal agencies and officials and the State officials identified in section 1681s of this title"). Therefore, no private right of action exists under subsection (a). *See Stafford v. Cross Country Bank*, 262 F. Supp. 2d 776, 782-83 (W.D. Ky. 2003).

Federal trial courts are split as to whether 15 U.S.C. § 1681s-2(b) provides a private right of action. However, the Sixth Circuit in two unpublished decisions held without much discussion that such a right exists. *Bach v. First Union Nat'l Bank*, 149 F. App'x 354, 358-59 (6th Cir. Aug. 22, 2005) ("While a consumer cannot bring a private cause of action for a violation of a furnisher's duty to report truthful information, a consumer may recover damages for a willful violation of 15 U.S.C. § 1681s-2(b) (1)(A)-(D).") (citing *Stafford*, 262 F. Supp. 2d at 782-83); *Downs v. Clayton Homes, Inc*., 88 F. App'x 851, 853 (6th Cir. Feb. 9, 2004) (assuming that private right of action existed under subsection (b)). The majority of other courts that have addressed the issue also have concluded that 15 U.S.C. § 1681s-2(b) created a private right of action by a consumer against a data furnisher. *See Sweitzer v. Am. Express Centurion Bank*, 554 F. Supp. 2d 788, 794 (S.D. Ohio 2008); *Khalil v. TransUnion, LLC*, No. 08-10303, 2008 WL 2782912, at *7 (E.D. Mich. July 17, 2008) (unpublished) (and cases cited therein). After canvassing the authority, this Court has previously held that there is a private right of action to enforce the provisions of section 1681s-2(b) of the FCRA. *Lynk v. Chase Home Finance, LLC*, 644 F. Supp. 2d 868, 881-82 (E.D. Mich. 2009), *order vacated in part on reconsideration on other grounds*.

Under section 1681s-2(b), "[u]pon receiving notice from a credit reporting agency that a consumer disputes the information a furnisher has provided, the furnisher is required to (1) investigate the veracity of the disputed information; (2) review the information provided by the credit reporting agency; (3) report the results of the investigation; and (4) correct any inaccuracies uncovered by the investigation." *Bach*, 149 F. App'x at 358 (citing 15 U.S.C. § 1681s-2(b)(1)(A)-(D)). However, the Sixth Circuit has not yet addressed in a published opinion the question whether a data furnisher's obligations under section 1681s-2(b) mature only when it receives notice of a dispute from someone other than a credit reporting agency. This Court has held that "'a furnisher of credit information . . . has no responsibility to investigate a credit dispute until after it receives notice from a consumer reporting agency.'" *Lynk*, 644 F. Supp. 2d at 882 (quoting *Stafford*, 262 F. Supp. 2d at 783-84). In this case, there is no allegation that (a) the plaintiff's credit has been unjustifiably marred, or that the plaintiff communicated his belief of the mistake to the credit reporting agencies. Therefore, the plaintiff's claim under the FCRA must fail.

The plaintiff also pleads a state-law claim of defamation with respect to his credit report. However, this claim fails as a matter of law because it is preempted by the FCRA. The FCRA contains two overlapping and potentially contradictory preemption provisions. *Compare* 15 U.S.C. § 1681h(e), *with* 15 U.S.C. § 1681t(b)(1)(F). "The tension between these two provisions . . . results from the fact that § 1681h(e) permits state tort claims, but requires a higher standard of proof for those in the nature of defamation, slander, or invasion of privacy, while § 1681t(b)(1)(F) prohibits all state claims covered by § 1681s-2." *Stafford*, 262 F. Supp. 2d at 785.

Under neither of these provisions, however, does the plaintiff's defamation claim survive. The plaintiff's complaint states summarily: "Upon information and belief, Defendants have made

or will make derogatory reports on Plaintiff's credit reports that are patently untrue." Compl. ¶ 79. This allegation fails to identify *any* inaccurate information about the plaintiff's credit reported by the defendants. Moreover, the plaintiff's allegations fall far short of alleging adequate facts to support "malice or willful intent to injure the consumer." *See Stafford*, 262 F. Supp. 2d at 789 n.11 (noting that a statement is made with "malice" when it is made "with knowledge that it was false or with reckless disregard of whether it was false or not"). Therefore, the plaintiff's defamation count must be dismissed.

### D. Fraudulent Misrepresentation and Fraudulent Inducement (Count 5)

As noted earlier, Federal Rule of Civil Procedure 9(b) requires allegations of fraud to be stated with particularity. The elements of fraud in Michigan are:

> (1) That defendant made a material representation; (2) that it was false; (3) that when he made it he knew that it was false, or made it recklessly, without any knowledge of its truth, and as a positive assertion; (4) that he made it with the intention that it should be acted upon by plaintiff; (5) that plaintiff acted in reliance upon it; and (6) that he thereby suffered injury.

*Hi-Way Motor Co. v. Int'l Harvester Co.*, 398 Mich. 330, 336, 247 N.W.2d 813, 816 (1976); *see also Higgins v. Lawrence*, 107 Mich. App. 178, 184, 309 N.W.2d 194, 197 (1981).

In his response to the defendants' motion to dismiss, the plaintiff for the first time raises a fraud-in-the-inducement theory. Michigan recognizes this theory, which is available "where a party materially misrepresents future conduct under circumstances in which the assertions may reasonably be expected to be relied upon and are relied upon." *Samuel D. Begola Servs., Inc. v. Wild Bros.*, 210 Mich. App. 636, 639, 534 N.W.2d 217, 220 (1995). The plaintiff proceeding under a fraud-in-the-inducement theory must establish that: (1) the defendant made a material representation; (2) the representation was false; (3) when the defendant made the representation, it knew it was false, or

-15-

made it recklessly, without knowledge of its truth and as a positive assertion; (4) the defendant made the representation with the intention that the plaintiff would act upon it; (5) that the plaintiff acted in reliance upon it; and (6) the plaintiff suffered damage. *Belle Isle Grill Corp. v. City of Detroit*, 256 Mich. 463, 477, 666 N.W.2d 271, 280 (2003).

In its entirety, the plaintiff's fraud count alleges:

> 61. By providing materially false property value and payment disclosures to Plaintiff, Defendants made material representations to Plaintiff.
> 62. Defendants further made false material representations by representing that property values on the mortgage market were much greater than they actually were.
> 63. These material representations were false at the time Defendants made them.
> 64. Defendants knew, or were reckless to the truth without knowledge, that these statements were false.
> 65. Defendants further knew, or were reckless to the truth without knowledge that the true property values were not reflective of the values of the loans being made by Defendants, and that Plaintiff could not sell the Property or refinance the loans.
> 66. Defendants made its [sic] material and false representations with the intention that Plaintiff would thereby borrow money from it, grant it a mortgage on the Property, pay associated closing costs and timely make monthly payments.
> 67. Plaintiff has suffered damages. . . .

Compl. ¶¶ 61-67.

These allegations do not satisfy Rule 9(b). The plaintiff fails to state who made the fraudulent statements at issue and when and where they were made. The plaintiff *must* know this information from his personal experience. It is unclear whether the plaintiff was misled during his first or second dealing with Countrywide. Moreover, the plaintiff's complaint fails to identify which of the two defendants are at fault. Nor do the allegations shed light on the substance of the alleged misrepresentations. The plaintiff did not describe any representations as to the market value of his property or describe any other statements that presumably led him to refinance.

-16-

Elsewhere in the complaint, the plaintiff intimates that the defendants falsified his income in order to qualify him for refinancing. Those allegations help him not at all because "there can be no fraud where the means of knowledge regarding the truthfulness of the representation are available to the plaintiff and the degree of their utilization has not been prohibited by the defendant." *Webb v. First of Mich. Corp*., 195 Mich. App. 470, 474, 491 N.W.2d 851, 853 (1992) (citing *Schuler v. American Motors Sales Corp*., 39 Mich. App. 276, 279-80, 197 N.W.2d 493, 495 (1972)). The plaintiff agrees that he signed the document that contained false information about his income. "[O]ne who signs an agreement, in the absence of coercion, mistake, or fraud, is presumed to know the nature of the document and to understand its contents, even if he or she has not read the agreement." *Lease Acceptance Corp. v. Adams*, 272 Mich. App. 209, 221, 724 N.W.2d 724, 732 (2006).

To the extent the plaintiff sees fraud in the defendants' prediction that the plaintiff would be able to refinance one more time or sell his property in the future, these allegations are insufficient because it is impossible to determine whether "these statements relate to past or existing facts and are thus actionable, or whether they relate to a future promise or expectation that does not constitute fraud." *Webb*, 195 Mich. App. At 473, 491 N.W.2d at 853.

Finally, the plaintiff makes vague statements regarding an industry-wide conspiracy to entice unsuspecting consumers to take on financial obligations they cannot afford. These allegations also must be deemed insufficient because the plaintiff has not identified a conspiratorial agreement and the parties to the agreement, much less the cause-and-effect link between a conspiracy and his losses. *See Twombly*, 550 U.S. at 556-59.

-17-

Although the plaintiff's allegations of fraud do not satisfy Rule 9(b), the Sixth Circuit has stated that Rule 9(b) must be read liberally. *See Coffee v. Foamex, LP*, 2 F.3d 157, 161 (6th Cir. 1993). Therefore, dismissal with prejudice on the basis of failure to plead with particularity ordinarily should be done only after the plaintiff has a chance to seek leave to amend the complaint. *Bledsoe*, 342 F.3d at 644. The Court will provide that opportunity by dismissing the fraud counts without prejudice, as the plaintiff requested, thereby allowing him an opportunity to amend if he timely files a new lawsuit.

### E. Negligent Misrepresentation (Count 6)

"A claim for negligent misrepresentation 'requires plaintiff to prove that a party justifiably relied to his detriment on information prepared without reasonable care by one who owed the relying party a duty of care." *Fejedelem v. Kasco*, 269 Mich. App. 499, 502, 711 N.W.2d 436, 437 (2006) (quoting *Mable Cleary Trust v. Edward-Marlah Muzyl Trust*, 262 Mich. App. 485, 502, 686 N.W.2d 770, 783 (2004) (internal quotation marks omitted)). The elements of negligent misrepresentation are: "(1) a material misrepresentation by the defendant; (2) the representation was unintentionally false; (3) the representation is made in connection with the contract's formation; (4) the defendant and plaintiff were in privity of contract; (5) the plaintiff acted in reliance on the defendant's misrepresentation; (6) resulting damages to the plaintiff; and (7) the plaintiff's damages inured to the defendant's benefit." *Sipes v. Kinetra, LLC*, 137 F. Supp. 2d 901, 910 (E.D. Mich. 2001) (citing *M&D, Inc. v. W.B. McConkey*, 231 Mich. App. 22, 25-26, 585 N.W.2d 33, 36-37 (1998)).

There is no Sixth Circuit authority on the subject, but other circuits have concluded that Rule 9(b) does not apply to claims of negligent misrepresentation. *See Baltimore County v. Cigna Healthcare*, 238 F. App'x 914, 921 (4th Cir. June 5, 2007); *Gen. Elec. Capital Corp. v. Posey*, 415

F.3d 391, 396-97 (5th Cir. 2005); *Tricontinental Indus., Ltd. v. PricewaterhouseCoopers, LLP*, 475 F.3d 824, 833 (7th Cir. 2007); *In re NationsMart Corp. Sec. Litig.*, 130 F.3d 309, 315 (8th Cir. 1997); *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1105 (9th Cir. 2003).

However, the negligent representation count in this case fails with respect to the Bank of America because a lender does not owe a duty of care to a loan applicant. *See Ulrich v. Fed. Land Bank of St. Paul*, 192 Mich. App. 194, 198-99, 480 N.W.2d 910, 912-13 (1991) (holding that a lender did not have an independent legal duty to exercise reasonable care in determining the plaintiff's eligibility for a loan); *see also Noel v. Fleet Fin., Inc.*, 971 F. Supp. 1102, 1115 (E.D. Mich. 1997) (predicting, based on *Ulrich*, that Michigan courts would not impose a duty of care on lenders with respect to loan applicants). With respect to BAC Home Loans Servicing, the claim fails because that defendant is not in privity of contract with either Countrywide or the plaintiff.

F. Michigan Mortgage Brokers, Lenders, and Servicers Licensing Act (Count 10)

The Mortgage Brokers, Lenders, and Servicers Licensing Act, Mich. Comp. Laws § 445.1651 *et seq.*, (MBLSLA) imposes licensing requirements on mortgage brokers, lenders, and servicers. Mich. Comp. Laws §§ 445.1651-445.1652. The commissioner of the Office of Financial and Insurance Regulation is authorized to promulgate regulations and otherwise enforce the act. Mich. Comp. Laws § 445.1661. Additionally, the act prohibits a licensee or registrant from "[e]ngag[ing] in fraud, deceit, or material misrepresentation in connection with any transaction governed by this act." Mich. Comp. Laws § 445.1672(b); *see Hanning v. Homecomings Fin. Networks, Inc.*, 436 F. Supp. 2d 865, 872 (W.D. Mich. 2006). The act provides an individual cause of action to "(a) [o]btain a declaratory judgment that a method, act, or practice is a violation of this act[;] (b) [o]btain an injunction against a person who is engaging in or is about to engage in a

method, act, or practice that violates this act[;] (c) . . . [r]ecover actual damages resulting from a violation of this act, or $250.00, whichever is greater, together with reasonable attorney fees and the costs of bringing the action." Mich. Comp. Laws § 445.1681(1).

This count must fail for the same reasons as the plaintiff's fraudulent misrepresentation count: the plaintiff simply has not pleaded allegations of fraud with the specificity required by Rule 9(b). The plaintiff should be allowed to amend his pleadings, however, so this count will be dismissed without prejudice.

## G. Michigan Usury Law (Count 11)

Michigan's usury statute prohibits certain lenders from charging interests rates that exceed seven percent per annum. Mich. Comp. Laws § 438.31. However, the statute explicitly excludes loans secured by a first lien on real property by a lender whose business activities are regulated by a state or federal agency where the parties agree in writing on a certain rate of interest. *See* Mich. Comp. Laws § 438.31c(2) ("The parties to a note . . . , the bona fide primary security for which is a first lien against real property . . . , may agree in writing for the payment of any rate of interest, but the note, mortgage, contract, or other evidence of indebtedness shall not provide that the rate of interest initially effective may be increased for any reason."). This exception is available only to "lenders approved as a mortgagee under the national housing act, . . . or regulated by the state or by a federal agency, who are authorized by state or federal law to make such loans." Mich. Comp. Laws § 438.31c(5).

The Michigan Court of Appeals concluded that as long as the lender is regulated by the state or federal agency and the primary security for the loan is a first lien against real property, the parties are free to negotiate any interest rate up to twenty-five percent, the criminal usury rate. *See Nelson*

*v. Assocs. Fin. Servs. Co. of Indiana*, 253 Mich. App. 580, 591, 659 N.W.2d 635, 641-42 (2002). As the nation's largest independent mortgage lender, Countrywide was, no doubt, subject to federal or state regulations, and was authorized by law to extend mortgages. There is no doubt that Bank of America also is subject to such regulations. Therefore, the statutory exemption bars the plaintiff's usury claim.

### H. Predatory Lending (Count 3)

Recent federal cases discussing Michigan law have concluded that "Michigan does not recognize a cause of action for 'predatory lending.'" *Shammami v. IndyMac Fed. Bank, FSB*, No. 09-12952, 2009 WL 3429654, at *3 (E.D. Mich. Oct. 21, 2009) (citing *Saleh v. Home Loan Servs., Inc.*, No. 09-10033, 2009 WL 2496682, at *2 n.1 (E.D. Mich. Aug. 17, 2009), and *Beydoun v. Countrywide Home Loans, Inc.*, No. 09-10445, 2009 WL 1803198, at *4 (E.D. Mich. June 23, 2009)); *see also Darr v Beal Bank S.S.B.*, No. 09-11861, 2009 WL 3429663, at *3 (E.D. Mich. Oct. 21, 2009). The Court has found no Michigan case that supports the plaintiff's theory of liability. The Court adopts the reasoning from the authority cited above and concludes that count 3 of the complaint fails to state a claim upon which relief can be granted.

### I. Accounting (Count 1)

An action for accounting seeks an equitable remedy. *Boyd v. Nelson Credit Ctrs., Inc.*, 132 Mich. App. 774, 779-80, 348 N.W.2d 25, 27 (1984). An accounting is not available where the action is for specific amount due under the contract. *Id.* at 779, 348 N.W.2d at 27. Similarly, an accounting is not available where discovery can reveal the amount of damages. *Cyril J. Burke, Inc. v. Eddy & Co.*, 332 Mich. 300, 303, 51 N.W. 238, 239 (1952). "To sustain a bill for an accounting there must be mutual demands, a series of transactions on one side, and payments on the other.

Where all the items are on one side, there can be no accounting." *Boyd*, 132 Mich. App. at 779, 348 N.W.2d at 27 (internal quotation marks and citation omitted).

The plaintiff has not pleaded the essential prerequisites for an accounting. He has not provided any allegations from which the Court could conclude that the asserted wrongs could not be remedied by money damages. Nor does he plead a series of back-and-forth demands. Therefore, the plaintiff's accounting count fails as a matter of law.

J.  Rescission, Reformation, and TRO/Preliminary Injunction (Counts 8, 9, and 12)

Rescission and reformation are not separate causes of action; rather, they are equitable remedies. *Gore v. El Paso Energy Corp. Long Term Disability Plan*, 477 F.3d 833, 842 n.2 (6th Cir. 2007). Even though the plaintiff lists temporary restraining order and preliminary injunction as a separate count of his complaint, he has never filed an appropriate motion, and given the dismissal of all other counts of the complaint, he could not prevail on such motion even if he did file it.

K.  Plaintiff's Motion to Dismiss Without Prejudice

On November 2, 2009, the plaintiff filed a last-minute motion to dismiss the case without prejudice. He claims that financial constraints do not allow him to continue litigating his claims at the present time. He wishes to preserve his federal claims and, "more importantly," his fraud claims.

"Whether dismissal should be granted under the authority of Rule 41(a)(2) is within the sound discretion of the district court." *Grover by Grover v. Eli Lilly & Co.*, 33 F.3d 716, 718 (6th Cir. 1994) (citing *Banque de Depots v. Nat'l Bank of Detroit*, 491 F.2d 753, 757 (6th Cir. 1974)). The touchstone inquiry is whether the dismissal will cause "plain legal prejudice" to the defendant, as opposed to the defendant "facing the mere prospect of a second lawsuit." *Ibid.* (internal quotation marks and citation omitted).

As noted earlier, a plaintiff failing to plead fraud with the specificity required by Rule 9(b) should have an opportunity to amend his pleadings. *Bledsoe*, 342 F.3d at 644. Dismissal without prejudice of the fraud counts will afford the plaintiff that opportunity, and the defendants will suffer no prejudice as a result, since the possibility of having to defend against an amended complaint exists in any event, whether it occurs now or later. Moreover, the defendants' interests in finality are served adequately by the statutes of limitations.

III.

The plaintiff has failed to state claims upon which relief may be granted. However, the prevailing law counsels in favor of honoring his request to amend the pleadings with respect to some of his claims. The Court will strike the balance between the plaintiff's right to restate certain claims and the defendant's interest in finality by dismissing claims amenable to amendment without prejudice.

Accordingly, it is **ORDERED** that the defendants' motion to dismiss [dkt #9] is **GRANTED IN PART AND DENIED IN PART**.

It is further **ORDERED** that the plaintiff's motion to dismiss without prejudice [dkt #16] is **GRANTED IN PART AND DENIED IN PART**.

It is further **ORDERED** that Counts 1, 2, 3, 4, 6, 7, 8, 9, 11, and 12 of the complaint are **DISMISSED WITH PREJUDICE**.

It is further **ORDERED** that Counts 5 and 10 of the complaint are **DISMISSED WITHOUT PREJUDICE**.

s/David M. Lawson
DAVID M. LAWSON
United States District Judge

Dated:  March 31, 2010

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on March 31, 2010.

s/Teresa Scott-Feijoo

TERESA SCOTT-FEIJOO